**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 10, 2013

No. 12-40302

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

FERNANDO FRAGA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The defendant appeals his 27-month prison sentence and lifetime term of supervised release following a guilty plea to failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). He contends that his sentence was both procedurally and substantively unreasonable. We AFFIRM in part, and we VACATE and REMAND in part.

I.

On January 4, 1994, Fernando Fraga was convicted of sexual assault in Wisconsin and sentenced to three years of probation. As a result of that conviction, Fraga was required to register as a sex offender until March 14, 2016. On June 13, 2011, a deputy with the United States Marshals Service

learned that Fraga was residing in Aransas Pass, Texas, and that he had not registered as a sex offender. The Deputy U.S. Marshal confirmed that Fraga had been living in Texas without registering as a sex offender. Fraga was arrested and charged with one count of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a).

On August 18, 2011, Fraga pled guilty, pursuant to a plea agreement, to one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a). At the time of his guilty plea, Fraga admitted that he had lived in Texas since April 2009, without registering, and that he knew he was supposed to register as a sex offender but did not do so. In the written plea agreement, the Government agreed (1) to recommend that Fraga receive maximum credit for acceptance of responsibility and a sentence of imprisonment within the applicable guideline range and (2) to recommend a reduction in Fraga's sentence if Fraga provided substantial assistance to the Government.

The amended Presentence Investigation Report ("PSR") calculated a base level of 14, reduced by two levels for acceptance of responsibility, resulting in a total offense level of 12 as well as a criminal history category of II. It indicated a guideline range of 12 to 18 months of imprisonment and a supervised release term of five years to life. The PSR included a detailed account of Fraga's criminal history, which, in addition to the 1994 conviction for sexually assaulting a 14-year-old girl, includes nine prior convictions. With respect to the conviction that formed the basis of Fraga's duty to register, the PSR showed that in 1994, at the age of 18, Fraga was found guilty of sexually assaulting a 14-year-old girl, although he claimed she told him she was 16 years old. He was convicted of sexual assault and sentenced to three years of probation. His probation was revoked in 1996, and he was sentenced to serve one year in prison, followed by four years of intensive sanctions, and he was required to register as a sex offender until March 14, 2016. In addition, between 1991 and 2007, Fraga was convicted of battery, disorderly conduct (on four occasions), burglary and theft,

operating a vehicle without carrying a license, and operating a vehicle under the influence. Two of those disorderly conduct violations involved assaults on women, as did the 1994 conviction for sexual assault of a minor.

Moreover, the PSR contained accounts of other abusive conduct, directed at women, that had not resulted in a conviction. In particular, it indicated an allegation of assault in September 1999, an allegation of sexual assault in August 2002, and another allegation of assault in August 2002. The two August 2002 allegations were made by the same woman. As a result of the incident in September 1999, Fraga was charged with Disorderly Conduct-Domestic Violence. As a result of the two incidents in August 2002, Fraga was charged with Second Degree Sexual Assault/Use Force and Disorderly Conduct-Habitual Criminality. All three cases were dismissed for unknown reasons. In interviews with the probation officer, both women apparently indicated that they dropped the charges at the urging of Fraga's family. The probation officer also reported an additional allegation of domestic violence in November 2010. That woman ultimately decided not to file charges against Fraga, and the case was closed.

Despite the detailed criminal history contained in the PSR, Fraga was only assessed two criminal history points—one for disorderly conduct/domestic abuse and one for operating under the influence—due to the age of the other convictions. As such, in the PSR, the probation officer noted that an upward departure may be warranted. Specifically, she explained that U.S.S.G. § 4A1.3(a)(1) provides for an upward departure if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." In addition, the probation officer noted that U.S.S.G. § 5K1.1 provides for an "encouraged" downward departure should Fraga provide substantial assistance to the Government.

The probation officer ultimately recommended that Fraga be sentenced to a 27-month term of imprisonment, a lifetime term of supervised release, and be

assessed a $100 special assessment. The probation officer reasoned that Fraga's criminal history score under-represented his criminal history and found Fraga's "continued pattern of alcohol abuse, domestic violence, and sexual assault" concerning. As such, she found an upward departure to a 27-month term of imprisonment was warranted to protect the public and deter future criminal acts. Moreover, she recommended a lifetime of supervised release in order to ensure Fraga registered as a sex offender, and because Fraga's offense of conviction was a sex offense.

At Fraga's sentencing hearing, the parties agreed that Fraga had an offense level of 12 and a criminal history category of II, such that the applicable guidelines sentencing range was 12 to 18 months with five years to a lifetime of supervised release, a $3,000 to $30,000 fine, and a $100 special assessment. The sentencing judge gave Fraga an opportunity to present his objections to the PSR. Specifically, Fraga denied the 1999 allegation of assault, the 2002 allegation of sexual assault, and the 2002 allegation of assault. The sentencing judge listened to Fraga's explanation, received evidence, and questioned Fraga about his version of the events. The probation officer testified that she had interviewed the two victims and they maintained that the statements they gave to the police were true and accurate. The sentencing judge once again returned to considering Fraga's version of the events; only then did she deny Fraga's objections to the PSR.

Pursuant to the written plea agreement, the prosecutor pointed out that Fraga had been willing to cooperate with the Government in prosecuting a child pornography production case. Although Fraga had agreed to testify against the defendant in that case, his testimony was ultimately unnecessary. Thus, although the prosecutor could not move for a downward departure based on substantial assistance, he requested that the sentencing judge consider Fraga's willingness to cooperate and recommended a sentence at the low end of the Guidelines range. The sentencing judge responded that she was considering an

4

upward departure, as recommended by the probation officer, but once again gave Fraga an opportunity to explain why a shorter sentence might be appropriate. Fraga's counsel mentioned Fraga's recent engagement and employment, in addition to his acceptance of responsibility. Fraga added that he wanted to apologize to his fiancee and daughter. The sentencing judge questioned Fraga about his compliance with his child support obligations. Although Fraga indicated that he had paid some child support, the probation officer explained that Fraga owed between $4,000 and $8,000 in child support payments and did not appear to be supporting the child; the sentencing judge gave Fraga an opportunity to explain. Fraga also apologized for failing to register as a sex offender. The sentencing judge then asked Fraga about whether his fiancee knew of his criminal history. Fraga testified that he told her soon after he met her, and the probation officer added that Fraga had allegedly assaulted the woman who was now his fiancee in 2010. The sentencing judge explained that she was having difficulty fashioning a sentence that would deter Fraga's future criminal conduct and protect the public, given Fraga's extensive history of assault. She once again gave Fraga an opportunity to speak. Fraga apologized and argued that he had already been punished for his prior offenses.

The sentencing judge ultimately sentenced Fraga to a 27-month term of imprisonment, followed by a lifetime of supervised release. In doing so, she imposed an upward variance of nine months, under 18 U.S.C. § 3553(a), above the Guideline range of 12 to 18 months. The sentencing judge noted that she "[didn't] even know if that's high enough to deter [Fraga's] future criminal conduct, and to protect the public, which is of vital concern to this Court." In her statement of reasons, the sentencing judge explained that "[t]he Court took into consideration the need to deter future criminal conduct and the need to protect the public, in light of the defendant's history of assaultive and sexually assaultive behavior" and noted that the sentence was based on (1) the nature and circumstances of the offense and history and characteristics of the defendant

(under § 3553(a)(1)), (2) the need to adequately deter criminal conduct (under § 3553(a)(2)(B)), and (3) the need to protect the public from further crimes (under § 3883(a)(2)(C)).

At the end of the sentencing hearing, Fraga objected to the reasonableness of his sentence, arguing that the sentencing judge did not adequately explain the sentence and that the sentence was greater than necessary under the factors enumerated in 18 U.S.C. § 3553(a). This appeal followed. On appeal, Fraga argues that the sentencing judge committed procedural error and imposed a substantively unreasonable sentence.

## II.

This Court reviews federal sentences under an abuse-of-discretion standard, "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range."[1] Our inquiry involves two steps. First, we must "ensure that the district court committed no significant procedural error."[2] Second, if the district court's sentencing decision is procedurally sound, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard."[3] Our review of sentencing decisions is "limited to determining whether they are 'reasonable.'"[4]

## III.

On appeal, Fraga questions the procedural and substantive reasonableness of both his 27-month prison sentence and his lifetime term of supervised release. We begin by evaluating the procedural and substantive

---

[1] *Gall v. United States*, 552 U.S. 38, 51 (2007).

[2] *Id.*

[3] *Id.*

[4] *Id.* at 46.

reasonableness of Fraga's 27-month prison sentence.   Then, we separately consider Fraga's lifetime term of supervised release in light of this Court's recent decision in *United States v. Alvarado*.[5]

## A.

Fraga first argues that the sentencing judge committed procedural error by not adequately explaining her reasons for (1) rejecting the mitigation evidence offered by Fraga and (2) imposing an upward variance.  Specifically, Fraga contends that she did not adequately explain why she was rejecting (1) the Government's testimony that Fraga had been willing to cooperate with another prosecution; (2) Fraga's argument that his prior sexual assault conviction occurred eighteen years earlier and he has had no other incidents with a child;[6] and (3) evidence of Fraga's recent engagement and employment.  Fraga contends that instead of considering this mitigating evidence, the sentencing judge merely reviewed his prior convictions and criminal history, stated that she had considered the § 3553(a) factors, and then concluded that a 27-month term of imprisonment was necessary to protect the public and deter future criminal conduct, even declining to provide further explanation for the sentence when Fraga objected to the adequacy of the explanation.  In response, the Government argues that the record shows that the sentencing judge considered the § 3553(a) factors, including Fraga's proffered mitigating evidence, and gave an adequate explanation for the upward variance, finding it necessary to deter further criminal conduct and protect the public.  We agree and find that the district court fulfilled its procedural obligation.

The Supreme Court has explained that a sentencing judge commits procedural error when she "fail[s] to adequately explain the chosen

---

[5] 691 F.3d 592 (5th Cir. 2012).

[6] To be clear, Fraga did not make this argument at sentencing.

sentence—including an explanation for any deviation from the Guidelines range."[7]   But, the Supreme Court has not imposed stringent requirements regarding the length or detail of such an explanation.  In *Rita v. United States*, the Supreme Court explained that where the defendant presents reasons for imposing a different sentence, as Fraga did here, "the judge will normally go further and explain why he has rejected those arguments."[8]  And, "[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so."[9]   The Court recognized, though, that "[s]ometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."[10]  In concluding that the sentencing judge's explanation for rejecting the defendant's arguments for a downward departure was, although brief, legally sufficient, the Court explained: "The record makes clear that the sentencing judge listened to each argument.   The judge considered the supporting evidence."[11]  The Court "acknowledge[d] that the judge might have said more" but concluded that where a matter is "conceptually simple" and "the record makes clear that the sentencing judge considered the evidence and arguments," the sentencing judge is not required "to write more extensively."[12] Moreover, we have previously explained that when imposing a non-Guidelines sentence, the district court "need not engage in 'robotic incantations that each statutory factor has been considered,'"[13] and therefore "a checklist recitation of

---

[7] *Gall*, 552 U.S. at 51.

[8] 551 U.S. 338, 357 (2007).

[9] *Id.*

[10] *Id.*

[11] *Id.* at 358.

[12] *Id.* at 359.

[13] *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) (citations omitted) (quoting *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005)).

the section 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable."[14]

In light of that precedent, we find that the sentencing judge here adequately explained her reasons for (1) rejecting Fraga's mitigating evidence and (2) imposing an upward variance on the term of imprisonment. As in *Rita*, the record makes clear that the sentencing judge heard and considered the evidence and arguments, repeatedly questioned Fraga, the prosecution and the probation officer, and gave Fraga multiple opportunities to speak and present mitigating evidence before adopting the PSR's findings and reasoning. Moreover, she explained that she found that the upward variance was necessary to deter future criminal conduct and to protect the public—proper considerations under § 3553(a)(2)(B) and § 3553(a)(2)(C). As this Court has explained, "[e]rror does not necessarily result when the district court's reasons, as in this case, are not clearly listed for our review."[15] This is not a case where the sentencing judge "did not mention any § 3553 factors at all" and "did not give any reasons for its sentence beyond a bare recitation of the Guideline's calculation."[16] In short, the record makes the sentencing judge's reasoning clear and allows for effective review; no further explanation was required.

B.

Fraga argues that his sentence to 27 months of imprisonment is substantively unreasonable (1) because the sentencing judge failed to account for Fraga's willingness to cooperate with the Government and (2) because the sentencing judge gave excessive weight to Fraga's 1994 sexual assault conviction and the 2002 allegation of sexual assault, ignoring Fraga's conduct over the last

---

[14] *Id.* (citation omitted).

[15] *United States v. Bonilla*, 524 F.3d 647, 657 (5th Cir. 2008).

[16] *United States v. Mondragon-Santiago*, 564 F.3d 357, 362–63 (5th Cir. 2009).

several years.  He also argues that the sentencing judge failed to account for the age of the 1994 conviction.  He contends that, because of these errors, his sentence is "greater than necessary" and "represents a clear error of judgment in balancing sentencing factors."

Generally, we review the reasonableness of a sentence for abuse of discretion, unless the issue was not raised below, in which case we review only for plain error.[17]  "Appellate review for substantive reasonableness is 'highly deferential,' because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant."[18]  In determining the substantive reasonableness of a sentence, we consider "the totality of the circumstances, including the extent of any variance from the Guidelines range."[19]  Where, as here, the sentence is outside the Guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."[20]  A major deviation from the Guidelines range requires a greater justification than a minor one.[21]  "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."[22]  With respect to considering the § 3553(a) factors, "[a] non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does

---

[17] *Mondragon-Santiago*, 564 F.3d at 360–61.

[18] *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) (citing *United States v. Key*, 599 F.3d 469, 473 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 997 (2011)).

[19] *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).

[20] *Gall*, 552 U.S. at 51.

[21] *Id.* at 50.

[22] *Id.* at 51.

not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[23]    Given the great deference we owe to the sentencing court, we cannot find that the sentencing judge abused her discretion in sentencing Fraga to a 27-month term of imprisonment. We consider each of Fraga's arguments in turn.

With respect to Fraga's first argument, the sentencing judge listened to the Government's testimony regarding Fraga's willingness to cooperate and, after hearing that testimony and questioning the prosecutor, concluded that Fraga's willingness to cooperate did not mitigate his offense or criminal history. In turn, the sentencing judge decided not to give Fraga's willingness to cooperate significant weight. No § 3553(a) factor requires the sentencing judge to take such cooperation into account,[24] and we cannot conclude that the sentencing judge abused her discretion by considering the testimony but ultimately declining to place significant weight on that cooperation.

With respect to Fraga's second argument, the district court judge did not abuse her discretion in giving significant weight to Fraga's criminal history and its characteristics. We have previously explained that "[a] defendant's criminal history is one of the factors that a court may consider in imposing a non-Guideline sentence."[25]    And, we have previously found it permissible for a sentencing judge to "evaluate[] the 'nature and circumstances of the offense and the history and characteristics of the defendant' and conclude[] that it would deviate 'to afford adequate deterrence to criminal conduct' and 'to protect the

---

[23] *Smith*, 440 F.3d at 708 (citations omitted).

[24] U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Thus, under § 5K1.1, the sentencing judge has discretion to reduce the sentence based on cooperation.

[25] *Smith*, 440 F.3d at 709 (citation omitted).

public from further crimes of the defendant.'"[26] Thus, the sentencing judge did not abuse her discretion in considering Fraga's criminal history and giving it more weight than Fraga's willingness to cooperate.

Although Fraga argues that the sentencing judge relied on an "overblown" view of his criminal record, the PSR reflects that his assaultive conduct continued to occur from 1995 through 2010. In particular, the PSR includes information about three assaults that were not prosecuted and several convictions for which Fraga received no criminal history points. As such, Fraga's criminal history category arguably under-represented the seriousness of his criminal history and the likelihood that he would commit other crimes, possibly warranting an upward departure under U.S.S.G. § 4A1.3(a)(1). The sentencing judge gave Fraga an opportunity to refute those allegations and convictions, and the probation officer testified that she had confirmed with the victims the factual accuracy of the 1999 and 2002 allegations of assault and sexual assault. The probation officer had also provided information on a 2010 allegation of domestic violence. In sum, we find that in light of Fraga's criminal history and characteristics, the nine-month deviation from the Guidelines range was substantively reasonable and, in accordance with § 3553(a), was "not greater than necessary" to effectuate the goals of sentencing.

Finally, we reject Fraga's argument that the sentencing judge erred in not considering the age of his 1994 sexual assault conviction. Fraga did not raise the argument below, and thus it is subject only to plain error review.[27] Even if the sentencing judge committed a plain error in not considering the age of that conviction, which is debatable, Fraga has not made any attempt to demonstrate that the error affected his substantial rights—by showing that there is a reasonable probability that, but for the district court's error, he would have

---

[26] *Id.* (quoting 18 U.S.C. §§ 3553(a)(1), (2)(B), (C)).

[27] *See United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005) (citations omitted).

received a lesser sentence[28]— especially given the sentencing judge's apparent concern with the nature of the offense and Fraga's pattern of assaultive conduct since 1994.

In short, we are persuaded that the sentence was reasonable; accordingly, we affirm Fraga's 27-month term of imprisonment.


## C.

Although we find Fraga's prison sentence both procedurally and substantively reasonable, we must separately consider his sentence to a lifetime term of supervised release in light of this Court's recent decision in *United States v. Alvarado*.[29]  In *Alvarado*, this Court found, under plain error review, that the sentencing judge had "erred by automatically imposing a lifetime sentence of supervised release without engaging in any analysis of the circumstances surrounding Alvarado's crime."[30]  At re-arraignment, the sentencing judge had declared: "I've never given, never not given, since it was authorized, a lifetime, a lifetime supervision in child pornography."[31]  The *Alvarado* court found:

> This statement suggests that the district court judge automatically defaulted to the imposition of a lifetime term.  The policy statement within the Guideline recommends a statutory maximum term of supervised release (life) if the conviction is a sex offense.  The statute, however, provides for a range of five years to a lifetime term of supervision. Therefore, Congress clearly contemplated that there would be instances where less than the maximum would be reasonable.  The judge, by her own admission, never considered the possibility of anything less than lifetime supervision.  Hence, the error was plain.  Clearly, the imposition of a lifetime of supervised release affects substantial rights.  And where a judge admits to the

---

[28] *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (citation omitted).

[29] 691 F.3d 592 (5th Cir. 2012).

[30] *Id.* at 598.

[31] *Id.*

automatic imposition of a sentence, without regard for the specific facts and circumstances of the case or the range provided for in the statute, then it seriously affects the fairness, integrity, and public reputation of judicial proceedings.[32]

Similarly here, at Fraga's re-arraignment, the sentencing judge, who also sentenced Alvarado, declared: "And I usually do give life imprisonment, life—sorry—life supervised release in these situations." And, as in *Alvarado*, at the time she imposed the sentence, the sentencing judge did not give reasons for her decision to impose a lifetime term of supervised release.[33]  As such, in light of *Alvarado*, we must vacate the order regarding the lifetime term of supervised release and remand the case for further proceedings on that issue.[34]

## IV.

For the foregoing reasons, we AFFIRM the district court's order regarding Fraga's 27-month term of imprisonment.  Further, we VACATE the district court's order pertaining to Fraga's lifetime term of supervised release and REMAND for further proceedings on this issue.

---

[32] *Id.* (internal citations and footnote omitted).

[33] We could arguably infer the sentencing judge's reasons for imposing the lifetime term of supervised release from the record.  However, *Alvarado* dictates that such an inference is improper when the sentencing judge has suggested that she automatically defaults to imposition of a lifetime term of supervised release.

[34] Fraga's general objection to the reasonableness of the sentence as a whole, which included the lifetime term of supervised release, arguably preserved this argument for appeal. However, even if Fraga forfeited the argument below, *Alvarado* dictates the result under the plain error standard of review.