# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 24, 2023

Lyle W. Cayce
Clerk

No. 21-40712

United States of America,

*Plaintiff—Appellee*,

*versus*

Muhamed Pathe Bah,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:20-CR-433-1

Before Higginbotham, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:*

Muhammed Bah pled guilty to one count of armed bank robbery while endangering another's life by the use of a firearm in violation of 18 U.S.C. § 2113(a) & (d), and one count of using, carrying, and discharging a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Bah now appeals, challenging the sufficiency of the district court's reasoning in imposing 300 months and life in prison, respectively. We AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-40712

## I.

## A.

On the morning of June 26, 2020, a then-unidentified individual robbed Texas Regional Bank in Harlingen, Texas. The robber arrived at the bank on a bicycle, placed a black backpack on the counter, and approached and shot a bank teller in the head, causing serious but non-fatal injury. The robber then approached a second teller and demanded: "[g]ive me the money." The second teller complied, placing money into the backpack. The robber then exited the bank "and rode away on a bicycle." Upon the robber's exit, the second teller called 911 while caring for the first teller.

Police apprehended Bah shortly thereafter. Officers identified him as "matching the description" put forward by eyewitnesses. The officers patted Bah down and found a .22 caliber revolver in his pocket, which contained 9 intact rounds and one fired casing. Bah's hands also tested positive for gunshot residue. Finally, Bah possessed a black backpack containing "several banded stacks of U.S. currency."

Bah gave a statement after being read his *Miranda* rights detailing many of the facts of the robbery, including confessing to owning the pistol and bringing it into the bank, though Bah "did not recall shooting the pistol while inside the bank."[1] Bah consented to a search of his apartment, which revealed 138 rounds of .22 caliber ammunition, an unlocked cell phone, and a receipt for the ammunition as well as a weapon. Eight days after the offense, Bah pled guilty without a plea agreement.

---

[1] The Pre-Sentence Report ("PSR") does not state when Bah was read his *Miranda* rights or when exactly this statement was provided. However, as neither Party contests the statement or its validity, we need not harp on this subtle blind spot.

No. 21-40712

In March 2021, Bah had a competency examination with a forensic psychiatrist and was found competent to stand trial. The examiner stated that Bah "does not show any evidence of intellectual disability." Detailed *infra*, Bah had a history of schizophrenia, but the examiner said that "[u]nlike individuals with schizophrenia," Bah exhibited a "speech pattern [that] is clear and logical, he does not suffer from hallucinations or delusions, he is able to argue his point clearly, he understands the charges against him, and he is not requiring psychotropic medications." Months later, Bah participated in a presentence investigation interview during which he accepted responsibility for the instant offense, concurred with the factual summary, and declined to offer additional information.

In August 2021, the Probation Office put forward a PSR. Shortly thereafter, the Government filed notice of an intent to request an upward variance. According to the final PSR, Count One yielded an offense level of 24; Count Two carried a statutory minimum sentence of ten years. Probation assessed a Guidelines range of 51 to 63 months and 120 months for Counts One and Two, respectively, to run consecutively. Probation recommended consecutive sentences of 63 months and 120 months.

The PSR also provided Bah's personal and criminal histories before the robbery.[2] According to his sister, Bah "was diagnosed with minor

---

[2] Per the PSR, Bah's mental health struggles are sourced to discussions with Bah's sister, as "[m]edical records have been requested and are pending receipt." The Record on Appeal does not include any additional medical records either party may have received since the PSR's drafting. However, neither party objected to this fact prior to Bah's sentencing or at the sentencing hearing, and the district court adopted the PSR. We therefore credit this recitation of facts. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (holding that a district court may adopt the facts in a PSR "without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and [a party] does not present rebuttal evidence or otherwise demonstrate that the

No. 21-40712

schizophrenia in 2019" at age 17 and "had been receiving medical treatment" for this diagnosis at the Behavioral Health Center in Charlotte, North Carolina. As part of this treatment, Bah "had been in in-patient treatment for 18 months" at the same facility in 2020 following a series of "psychosis episodes." While in treatment, Bah "was receiving his medication and began feeling better," but upon being released, he "stopped taking his medication and his mental health began to decline." The PSR also noted that Bah had a moderate criminal history, comprising four minor prior convictions.[3]

## B.

The district court adopted the PSR without objection by Bah. After a few housekeeping matters,[4] the Parties made their cases, the Government elaborating that it intended to seek an upward variance of sentences of 25 years for each Count to run consecutively, the statutory maximum term for Count I and an above-Guidelines term for Count II. During the entirety of the Parties' sentencing arguments, the district court engaged with either party only once, "interject[ing] . . . just for the clarity of the record" as to the specific upward variance the Government sought. After argument, the district court spoke twice more: first to assist a victim in delivering her victim witness statement, and then to ask Bah if he wished to address the court. Bah declined. The district court then said:

---

information in the PSR is unreliable" (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007))).

[3] The convictions are: (1) a 2018 conviction for assaulting a government employee, resulting in a 60-day imprisonment; (2) a 2017 speeding violation; (3) a 2017 seatbelt violation; and (4) a 2018 conviction for driving without a license.

[4] These include correcting an opacity in the PSR, admitting evidence in keeping with the local rules, and deciding upon the procedure for the sentencing hearing itself.

No. 21-40712

The court will now proceed with sentencing.

As to Count One, pursuant to 3553(a)(1), the nature and circumstance of the offense and history and characteristics of the defendant, [the] court is going to grant an upward variance.

As to Count Two, pursuant to 3553(a)(1), the nature and circumstance of the offense and history and characteristics of the defendant, the court is also going to grant an upward variance.

As to Count One, the court hereby sentences the defendant to 300 months with the Bureau of Prisons with five years of supervised release.

As to Count Two, the court -- the court is going to sentence the defendant to life in prison. I'm not sure if supervised release is applicable, but the court will also assess five years of supervised release.

. . .

[T]hese terms are to run concurrently.[5]

Following this announcement, the district court read the "terms of supervised release into the record," permitted defense counsel to "make a record with [] Bah" regarding his understanding of the sentence, and solicited Bah's preference on placement. The hearing then concluded.

## II.

"Where a defendant preserves a procedural sentencing error . . . by objecting before the district court, we review the sentencing court's factual

---

[5] The language omitted via ellipses is a minor, irrelevant colloquy with the Probation Officer.

No. 21-40712

findings for clear error and its interpretation or application of the guidelines de novo."[6] But "if the defendant failed to object to a procedural error, we review only for plain error."[7]

To establish plain error, a criminal defendant must demonstrate: (1) "an error that has not been intentionally relinquished or abandoned"; (2) that is "plain—that is to say, clear or obvious"; and (3) "affected the defendant's substantial rights."[8] Upon making this threefold showing, an appellate court "should exercise its discretion to correct the forfeited error if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[9] In other words, "granting relief under plain error review is discretionary rather than mandatory."[10]

## III.

## A.

In *Gall v. United States*, "[t]he Supreme Court [] explained that a sentencing judge commits procedural error when [the judge] 'fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'"[11] And "because 'the law requiring

---

[6] *United States v. Randall*, 924 F.3d 790, 795 (5th Cir. 2019).

[7] *United States v. Coto-Mendoza*, 986 F.3d 583, 585 (5th Cir.), *cert. denied*, 142 S. Ct. 207 (2021); *see also* FED. R. CIV. P. 52(b).

[8] *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

[9] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[10] *United States v. Seale*, 600 F.3d 473, 488 (5th Cir. 2010).

[11] *United States v. Fraga*, 704 F.3d 432, 438 (5th Cir. 2013) (final alteration in original) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

courts to explain sentences is clear,'"[12] for the sake of the first two prongs of the plain error standard, we need only ask if the district court committed error insofar as it failed to sufficiently explain the reason for the sentence imposed.

Rules regarding the requisite length and detail of a district court's explanation are necessarily elusive because, as the Supreme Court reminded: "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."[13] "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."[14] Elusiveness notwithstanding, this Court is guided by two rules of thumb: (1) a "district court must give a more detailed explanation for a non-Guidelines sentence"[15] such that "a major departure should be supported by a more significant justification than a minor one";[16] and, (2) at the same time, a district "court . . . need not engage in 'robotic incantations that each statutory factor has been considered.'"[17]

## B.

Here, the record shows that the district court heard Bah's admission of guilt and his agreement that the facts contained in the Factual Basis were correct. Bah also declined to allocute. As well, there is no doubt that the court

---

[12] *United States v. Chon*, 713 F.3d 812, 824 (5th Cir. 2013) (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 364 (5th Cir. 2009)).

[13] *Rita v. United States*, 551 U.S. 338, 356 (2007).

[14] *Id.* at 357.

[15] *United States v. Churchwell*, 807 F.3d 107, 122 (5th Cir. 2015).

[16] *Gall*, 552 U.S. at 50.

[17] *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) (quoting *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005)).

was presented with the Parties' arguments, both in written form and thereafter orally at the sentencing hearing. The court also received written victim impact statements, again recounted at sentencing. Taken together, the district court was intimately familiar with the harrowing facts of the case and the Parties arguments' based thereupon, so it is therefore "apparent from the record how and why the district [judge] selected the . . . sentence."[18]

As in *United States v. Coca-Ortiz*, "the district court indicated that the . . . sentence was appropriate based on [] considerations under 18 U.S.C. § 3553(a)[.]"[19] Specifically, the district judge tied his sentencing decision to: 1) the nature of the offense; and 2) Bah's history and characteristics. Even if those factors are slightly more generalized, they do assist our appellate review, distant though it be. In sum, "[t]his is not a case where the sentencing judge 'did not mention any § 3553 factors at all' and 'did not give any reasons for its sentence beyond a bare recitation of the Guidelines calculation.'"[20] As we have previously made clear, "there is no error when 'examining the full sentencing record reveals the district court's reasons for the chosen sentence and allows for effective review by this court.'"[21] "The law requires no more."[22]

---

[18] *United States v. Segura*, 444 F. App'x 717, 718 (5th Cir. 2011) (unpublished) (per curiam).

[19] 801 F. App'x 285, 286 (5th Cir.) (unpublished) (per curiam), *cert. denied*, 141 S. Ct. 607 (2020).

[20] *Fraga*, 704 F.3d at 439 (quoting *Mondragon-Santiago*, 564 F.3d at 362–63).

[21] *United States v. Key*, 599 F.3d 469, 474 (5th Cir. 2010) (alteration omitted) (quoting *United States v. Bonilla*, 524 F.3d 647, 658 (5th Cir. 2008)).

[22] *United States v. Osorio-Abundiz*, 303 F. App'x 239, 240 (5th Cir. 2008) (unpublished) (per curiam).

No. 21-40712

\* \* \* \*

We AFFIRM.