# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2024

Lyle W. Cayce
Clerk

_____

No. 23-20348
_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHERYL CHRISTIN KISSENTANER,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-157-1

_____

Before JOLLY, SOUTHWICK, and DUNCAN, *Circuit Judges*.

E. GRADY JOLLY, *Circuit Judge*:[*]

A jury convicted Cheryl Kissentaner, under 26 U.S.C. § 7206(2), on seven counts of aiding and assisting in the preparation and presentation of false tax returns. The district court imposed an above-guidelines sentence of 144 months of imprisonment and one year of supervised release. The district court also ordered restitution to begin immediately. On appeal, Kissentaner challenges her conviction, term of imprisonment, and the order of restitution.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-20348

We AFFIRM the conviction and sentence, and MODIFY restitution as provided in this opinion.

## I.

## A.

Cheryl Kissentaner owned a Texas-based tax preparation business. On March 30, 2022, she was indicted on 15 counts of aiding and assisting in the preparation and presentation of false tax returns under 26 U.S.C. § 7206(2). ROA.23-29. Upon arrest, she was released on bond, conditioned on her submission to supervision, seeking fulltime employment, and not assisting with tax preparation. ROA.34, 38-43. The district court later revoked her bond and committed her to custody for failing to comply with these terms. ROA.157-64, 3146-47.

At trial, IRS agent Greg Meyer set the stage for the government's investigation into Kissentaner. ROA.1728. Meyer testified to irregularities in Kissentaner's clients' tax returns compared to national averages. Furthermore, he testified that Kissentaner used false information in these filings. ROA.1728-38. Meyer testified that 98 percent of Kissentaner's clients received refunds, while the national average is 77 percent; that 13 percent of her clients received a fuel tax credit for commercial vehicles compared to 0.2 percent nationwide; and that 38 percent of her clients received Schedule A itemized deductions compared to 30 percent nationwide. ROA.1743-45. The court admitted into evidence tax returns prepared by Kissentaner from 2015 to 2018 for these clients.

Agent Meyer further testified that the IRS had sent an undercover agent to Kissentaner's business under the guise of having his tax return prepared. ROA.1746-47. Kissentaner had him fill out a new client information sheet. The undercover agent, however, left the client referral section blank, which signaled to Kissentaner that the "new client" was not

part of her network. ROA.1749-52. Meyer testified that the operation failed when the undercover agent's return showed no reliance on false financial information. Meyer offered the opinion that this failure likely occurred because the agent had not included a client referral. ROA.1752. When the court itself asked Meyer why the operation failed, Meyer responded that this sort of operation often fails "[b]ecause they're aware that they're preparing returns incorrectly, and they're nervous." ROA.1753. Meyer then listed discrepancies that he found in the returns of five of Kissentaner's clients. ROA.1753-61.

These same five clients testified at trial that Kissentaner used false financial information in preparing their tax returns instead of the information they had provided her. ROA.1832-51, 1891-96, 1905, 1928-96, 2034-35, 2082, 2089-2111, 2125-26, 2159-93, 2217, 2221. We note the following examples. Two returns included tens of thousands of dollars of business loss deductions for individuals who did not own businesses. ROA.1838-40, 2168-69, 2178-79. Credits were listed on forms electronically submitted to the IRS that were different from those listed on the forms given to the client. ROA.1845-46. One client's return included $98,601.00 in itemized deductions one year and $84,754.00 the next, none of which were authorized by the client. ROA.1953-55, 1961. One client's returns listed $119,398.00 in business losses over a three-year period for a business that was profitable. ROA.1960-61, 1972-82. Clients further testified to receiving much larger tax returns when using Kissentaner compared to other tax preparers. ROA.1849-50; 1896; 1930-31; 2117; 2129-30; 2211-12. One client testified to receiving a tax refund for years in which he had paid no federal income tax. ROA.2167-93; 2228-33.

There was also testimony that Kissentaner was forgetful about her own tax obligations. This failure had other adverse consequences for Kissentaner. IRS agent Natasha March testified that Kissentaner failed to file her personal tax returns between 2012 and 2017. ROA.2263. March

No. 23-20348

testified further that an individual must be tax compliant in order to be issued a Preparer Tax Identification Number (PTIN), which is required to prepare tax returns for others. ROA.2265.

During her closing argument, Kissentaner's attorney made the most of damning evidence: she conceded that the tax forms were false, but she argued that Kissentaner had been tricked into using false information provided by her clients. ROA.2363. The jury was not receptive to her arguments; it convicted Kissentaner on seven counts. ROA.311-12, 329-35.

## B.

And then came the sentencing. Kissentaner's offense level and criminal history score resulted in a guidelines range of 41 months to 51 months of imprisonment, one year of supervised release for each count, and restitution. ROA.3111-19. Kissentaner requested a downward variance, but the government was having none of that; it argued for an upward variance. ROA.3157-63, 3271-87. The district court ultimately sentenced Kissentaner to 144 months of imprisonment and one year of supervised release. In imposing this sentence, the court explained that the guidelines addressed neither her past criminal history nor her failure to comply with her pretrial release conditions.[1]  ROA.2443-44. The district court further imposed restitution of $71,810.00 as a term of supervised release; the court, however, erroneously ordered restitution payments to begin immediately. ROA.322-23, 335, 2444-45.

## II.

---

[1] Kissentaner has four previous convictions: (1) failure to stop and give information for striking a victim with a vehicle and fleeing; (2) carrying a weapon while on probation; (3) evading arrest when an officer was investigating a shooting; and (4) retaliation, which involved assisting in killing a man to prevent him from testifying at trial. ROA.3112-14.

No. 23-20348

We focus on the merits of Kissentaner's appeal. She asserts errors based on: agent Meyer's "overview testimony" relating to the falsity of the client tax returns;[2] agent Meyer's testimony explaining why he believed the undercover operation failed; and the testimony of her failure to file timely her own personal taxes. She further challenges the reasonableness of her sentence and the legality of the restitution order. We proceed to address each challenge.

A.

We first turn our attention to Kissentaner's arguments that the district court erred by allowing agent Meyer to testify (1) that information in her clients' tax returns was "false" and (2) why tax sting operations focusing on tax preparers often fail. Appellant's Br. at 12-19. Kissentaner concedes that she did not preserve these arguments for appeal. Appellant's Br. at 12. We review such unpreserved issues for plain error. *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014). To establish plain error, an appellant must show (1) an error (2) that is "clear or obvious" and (3) that affects "substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009). If these showings are made, this court has discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

At trial, agent Meyer testified to the falsity of the information in Kissentaner's clients' tax returns before the jury heard the clients' testimony about the falsity of their respective tax returns. ROA.1728-45. Kissentaner's attorney, however, conceded at trial that the information, which Kissentaner

---

[2] Overview testimony refers to testimony in which a witness summarizes evidence that has not yet been presented to the jury . *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003).

5

had inserted in the tax returns, was "false." By such admission that the information was false, Kissentaner has waived her challenge to this testimony.

Agent Meyer's testimony concerning the reasons why undercover operations sometimes fail is at issue, however. To summarize the facts relevant: the district judge asked agent Meyer why the operation failed, and Meyer responded that such operations often fail when the target becomes nervous because he or she is sensitive to the illicit nature of the business. ROA.1752-53. Kissentaner argues that the admission of this evidence violated Federal Rules of Evidence 704(b), which prohibits expert testimony regarding whether a defendant acted with a mental state when the mental state is an element of a charged crime. Fed. R. Evid. 704(b). The Supreme Court, however, recently addressed a similar question. The Supreme Court held testimony that "most" criminals have a particular mental state relative to crime at issue is not prohibited by Rule 704(b), because such testimony does not definitively address the defendant's mental state; thus, such testimony leaves room for the jury to determine whether the defendant herself had that mental state. *United States v. Diaz*, 144 S.Ct. 1727, 1733-35 (2024). Agent Meyer's testimony, i.e., his opinion why sting operations *often* fail, left room for the jury to decide whether Kissentaner had the requisite mental state; thus, the testimony did not violate Rule 704(b) under *Diaz*. Accordingly, there was no error, plain or otherwise.

## B.

Kissentaner next argues that the district court erred by allowing agent March to testify that Kissentaner had failed to file timely her own personal tax returns. She contends that the admission of this evidence violated Rule

404(b).[3]   Appellant's Br. at 27-40.   Kissentaner timely objected to this evidence.  For our own purposes today, we will assume that the district court abused its discretion by admitting this evidence.  But even if the district court erred, we further ask whether the error was harmless, i.e., "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  *United States v. Ricard*, 922 F.3d 639, 653 (5th Cir. 2019) (internal quotation marks and citations omitted).

To determine whether an error is harmless, we "review the facts of the case and the evidence adduced at trial to determine the effect of the unlawfully admitted evidence upon the other evidence adduced at trial and upon the conduct of the defense."  *United States v. Watkins*, 741 F.2d 692, 695 (5th Cir. 1984) (internal quotation marks and citations omitted).  An error is harmless if, absent the impermissible taint, "the [other] evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt."  *Id.*

We find such overwhelming evidence here that supports the verdict of guilt: specifically, we refer to the testimony of five of Kissentaner's clients.  All testified to criminal malfeasance by Kissentaner, including preparation of their tax returns with fanciful financial information that the clients had not provided.   Even more flagrant, though, was a client's testimony that Kissentaner delivered to her a copy of her return, but submitted a completely different return to the IRS on her behalf.  ROA.1845-46.  This testimony, together with evidence of many thousands of dollars of willful and fraudulent deductions, was overwhelming.  Consequently, the admission of evidence that Kissentaner had not timely filed her own returns was harmless in the

_____

[3] "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).

light of the overwhelming evidence of her guilt of the crimes for which she was convicted. In short, the district court committed no reversible err by admitting evidence of Kissentaner's failure to file timely her own tax returns.

## C.

We now turn to Kissentaner's sentence. She argues that the sentence was substantively unreasonable. Appellant's Br. at 41-49. Instead of sentencing her within the guidelines range of 41 to 51 months, the district court imposed a sentence of 144 months of imprisonment. ROA.2443-43.

We review the reasonableness of a sentence for abuse of discretion. This standard of review is "highly deferential" to the district court. *United States v. Hernandez*, 876 F.3d 161, 166 (5th Cir. 2017) (citation omitted). As we have said before, "the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant."[4] *Id.* The district court is required to impose a sentence that is sufficient but not greater than necessary to comply with the sentencing aims of 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). A sentence outside the guidelines range unreasonably fails to reflect the Section 3553(a) factors where it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the

---

[4] The Section 3553 factors, which are to be considered in imposing a sentence, include, inter alia, "the nature and circumstances of the offense and the history and characteristics of the defendant…the need for the sentence imposed…the kinds of sentences available…the kinds of sentence and the sentencing range established for…any pertinent policy statement…the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and…the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

sentencing factors." *United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013) (internal quotation marks and citation omitted).

Here, the district court accounted for the criminal sentencing factors we have noted in Section 3553(a). It then observed that "the guideline sentence did not take into consideration the history and characteristics of this defendant, including prior criminal history which were not considered[,]" such as her delinquent personal taxes, use of an illicit PTIN, and failure to cooperate with the pretrial conditions. ROA.2442-43. Kissentaner's four earlier convictions—one of which involved assisting in killing a man to prevent his testifying at an upcoming trial—were not accounted for in the guideline range. ROA.3112-13. District judges may appropriately consider all of these factors when imposing a sentence. *United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006); *United States v. Harris*, 702 F.3d 226, 230-31 (5th Cir. 2012). Accordingly, we hold that, in confecting Kissentaner's sentence, the district court properly weighed and balanced the relevant factors. *Fraga*, 704 F.3d at 440.

Kissentaner further argues her sentence warrants reversal because it is above the average sentence imposed for this sort of criminal conduct. This argument lacks persuasive punch because an "above average" length of a sentence does not require reversal. *United States v. Willingham*, 497 F.3d 541, 544-45 (5th Cir. 2007). We thus conclude that Kissentaner has failed to show that the district court abused its discretion in imposing her sentence.

## D.

Kissentaner's final argument is that the district court erred in ordering restitution to begin immediately.[5] We review de novo the legality of

---

[5] Kissentaner does not challenge the order of restitution or the amount ordered.

restitution. *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020). Here, the district imposed, as a term of supervised release, a restitution order of $71,810.00. Furthermore, the court separately ordered restitution payments to begin immediately. ROA.322-23, 335, 2444.

Although not authorized by statute, district courts may impose restitution, as here, for Title 26 offenses as a term of supervised release. *United States v. Miller*, 406 F.3d 323, 329 (5th Cir. 2005). In such cases, however, restitution may only begin at the commencement of the term of supervised release. *United States v. Howard*, 220 F.3d 645, 647 (5th Cir. 2000). It follows that the district court exceeded its statutory authority by ordering restitution to begin immediately. The proper remedy for this error is to modify the judgment to make clear that restitution is not required until the beginning of her term of supervised release. *United States v. Westbrooks*, 858 F.3d 317, 328 (5th Cir. 2017), vacated on other grounds, 138 S. Ct. 1323 (2018).

## III.

In sum, the judgment of the district court is, in all respects, AFFIRMED as to Kissentaner's conviction and sentence. However, we hereby MODIFY the order of restitution to provide that no restitution is due until the beginning of Kissentaner's term of supervised release.

AFFIRMED, ᴀꜱ MODIFIED.