In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-3741

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS D. THOMPSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 15-CR-30146 — **Michael J. Reagan**, *Chief Judge*.

ARGUED APRIL 18, 2017 — DECIDED JULY 28, 2017

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. In June 2015, a fifteen-year-old girl got into a heated argument with her father, causing her to run away from home with nothing but a bag full of clothes. She was distraught, insecure, and alone. At her lowest point, she planned to kill herself by jumping off of a bridge.

Marcus Thompson found her on the streets of Madison, Illinois and decided to prey on her vulnerability. He asked

her if she wanted to make some money as a model and promised to help her obtain modeling work. Being the naïve and impressionable teenager that she was, she got into his truck and agreed to ride away with him.

Unbeknownst to her, however, Thompson had different plans. He drove the girl to Farmington, Missouri to pick up his wife. He and his wife then stole a camper, and the three embarked on a six-week odyssey of sexual exploitation in which he sold the girl's sexual services to at least fifteen men across three states. Thompson himself had sex with the girl at least five times, knowing full well that she was a minor.

Thompson's prostitution operation was sophisticated. He and his wife took numerous sexually suggestive pictures of the girl (including one nude picture) and posted them on Backpage.com—a website used for advertising commercial sex acts. When men responded to the advertisements, he would arrange for them to have sex with the girl in nearby hotels. He used a sliding fee scale, charging them $60 for 15 minutes, $100 for 30 minutes, $200 for an hour, and $800 for the day with the girl. And he allowed the men to take pictures and videos of her for an additional cost.

Thompson also took steps to impede any attempts to rescue the girl. For instance, he hid the girl's face in the pictures he posted online so that no one would recognize her. And he told her to ask prospective customers if they were cops; to confirm that they were not cops, she would have them touch her vagina before she agreed to have sex with them.

Thompson used fear to ensure the girl's complicity in his depraved enterprise. For example, he threatened the girl af-

ter she refused to have anal sex with a customer. He also threatened her after she tried to escape.

When Thompson was done with the girl, he sold her to a truck driver for $2000. The driver ultimately returned her to Thompson. Thompson then gave the girl to a different truck driver who drove her back to Illinois. There, she was able to contact her family and to obtain medical attention.

Thompson was apprehended soon after. On September 8, 2015, a grand jury returned a two-count indictment charging him with sex trafficking of a child by force, fraud, or coercion and conspiracy to do the same in violation of 18 U.S.C. § 1591(a)(1)–(2), (b)(1)–(2) and § 1594(c). He pled guilty to these crimes without a plea deal.

On October 12, 2016, the district court held a sentencing hearing. Throughout the hearing, the court referenced Thompson's presentence report, which recites the facts recounted above. Thompson admitted that he read the report with his attorney and certified that everything in it is true, correct, and accurate. The court then accepted the report and adopted its factual findings.

The court used the report to calculate Thompson's guidelines range of 360 months to life imprisonment. The court then analyzed the § 3553 factors, recounting the heinous nature of Thompson's crime; Thompson's wanton disrespect for the law and the need for deterrence; the unspeakable physical and emotional damage to the victim, including the recurrent harm of having pornographic images of her forever circulated on the internet; the lack of meaningful mitigating factors; and Thompson's tepid acceptance of responsibility. The court offered to expound further on the § 3553 fac-

tors, but Thompson expressly declined this offer. In the end, the court imposed a life sentence.

Thompson appealed, raising several issues—none of which have merit.

The first issue is whether Thompson made a knowing and voluntary guilty plea. To address this issue, we consider "(1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the judge's inquiry during the plea hearing and the defendant's statements; and (5) the evidence proffered by the government." *United States v. Woodard*, 744 F.3d 488, 495 (7th Cir. 2014) (quoting *United States v. Blalock*, 321 F.3d 686, 688–89 (7th Cir. 2003)). The law also requires a district court to ensure that the defendant understands his rights. Fed. R. Crim. P. 11(b).

The court conducted a thorough and proper plea colloquy. At the outset, the court ensured that Thompson was proficient in English, had no mental issues, and was able to think clearly. The court then told Thompson that he could seek clarification at any time if anything confused him. Thompson was also free to confer with his counsel at any time, and the court ensured that he was satisfied with his counsel's representation. Before the court accepted the plea, it made sure that Thompson understood his constitutional and Rule 11 rights, the charges and evidence against him, and the penalties he faced. Thompson said that he understood these things and agreed that the government could prove its case. After finding that Thompson was competent to plead guilty, the court accepted his plea.

We agree that Thompson was competent to plead guilty. Although he was a high school dropout, he was intelligent enough to operate a sophisticated online prostitution scheme with fixed and variable prices, all while evading detection from authorities. Thompson had also pled guilty to crimes nine times before, so this wasn't his first rodeo. Moreover, throughout the entire process, Thompson never once hesitated or sought clarification. These facts show that he knowingly and voluntarily pled guilty. Thus, the court committed no error in accepting his plea.

The next issue is whether the court determined that there was a factual basis for Thompson's guilty plea before entering judgment. Rule 11 permits the court to establish a factual basis "from anything that appears on the record." *United States v. LeDonne*, 21 F.3d 1418, 1424 (7th Cir. 1994).

The record overwhelmingly supports Thompson's convictions. As noted above, the government charged Thompson with sex trafficking of a child by force, fraud, or coercion and conspiracy to do the same. Before pleading guilty, Thompson signed a document titled "Stipulation of Facts." (R. 49.) The document states that Thompson "enticed" a minor "to enter into his vehicle in Madison, Illinois, with the promise of helping her attain modeling work." (R. 49 at 1.) Thompson then picked up his wife, and the two agreed to prostitute the girl. These facts show conspiracy. They also show that Thompson used the promise of modeling work "to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2). Because modeling work was never in the cards, the "the offense was effected by means of … fraud." 18 U.S.C. § 1591(b).

At any rate, aside from sex trafficking by fraud, the facts in Thompson's presentence report show sex trafficking by force. *See United States v. Arenal*, 500 F.3d 634, 638 (7th Cir. 2007) (noting that a district court may consider "information contained in the [presentence report] to establish a factual basis before entry of judgment and imposition of sentence"). The report notes that Thompson twice threatened the victim—once when she denied a customer anal sex and once when she tried to escape from her sexual enslavement. During sentencing, Thompson certified that the facts contained in the report are true. Thereafter, the court adopted the report's factual findings. Accordingly, there is a sufficient basis for Thompson's convictions.

The final issue is whether the court imposed a reasonable sentence. We review claims of procedural error in sentencing *de novo*, and we review challenges to a sentence's overall substantive reasonableness for abuse of discretion. *United States v. Nania*, 724 F.3d 824, 830 (7th Cir. 2013).

Thompson contends that, during sentencing, the court committed numerous procedural errors, rendering his life sentence unreasonable. Specifically, he claims that the court erred by (1) refusing to consider a two-page summary of case law providing information about sentences imposed on similarly situated defendants; (2) concluding that Thompson's cognitive difficulties and childhood adversity were not mitigating; (3) finding that Thompson threatened the victim with force; (4) calling Thompson a "pedophile" and a "sexual predator"; and (5) considering information outside the record. We disagree that these were errors.

First, there was no error in refusing to consider Thompson's two-page summary of case law addressing the § 3553

sentencing-disparity factor. Thompson gave that summary to the court halfway through his sentencing hearing. As the court explained, it had no time to research the summary's underlying cases or even give the summary itself any sort of thoughtful review. In any event, the court imposed a within-guidelines sentence, thereby neutralizing the risk of unwarranted sentencing disparities. *See United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017) (noting that "the Sentencing Guidelines are themselves an anti-disparity formula," so "to base a sentence on a properly determined Guidelines range is to give adequate consideration to the relation between the defendant's sentence and those of other persons").

Second, the court committed no error when it declined to credit Thompson's cognitive difficulties and childhood adversity as mitigating. The court found that Thompson's apparent cognitive difficulties did not prevent him from obtaining a commercial driver's license, discerning right from wrong, or operating a successful (albeit sordid) business venture. And as for Thompson's childhood adversity—namely, his mother's drug abuse and father's incarceration—Thompson has not shown how he is different from so many other criminal defendants who have been punished for their crimes. *See United States v. Hull*, 608 F.3d 340, 347 (7th Cir. 2010). Although the court could have credited Thompson's mitigating evidence, it did not have to do so.

Third, it was not error to find that Thompson threatened the victim with force. Indeed, Thompson admitted as much by conceding the truth of the facts in his presentence report, which states that Thompson twice threatened the victim.

Fourth, the court did not err by calling Thompson a "pedophile" and a "sexual predator." The court based these

characterizations on the facts in the record. Those facts show that Thompson had sex with a fifteen-year-old girl at least five times. They also show that Thompson sold the girl's sexual services to numerous men and allowed those men to videotape their sexual acts with her. Suffice it to say that the court's characterizations were accurate.

Finally, the court properly considered information outside the record. During sentencing, the court explained that it sometimes reviews information submitted during discovery to confirm that the defendant's presentence report is accurate. Nevertheless, the court assured the parties that it would "stick to the information in the [p]resentence [r]eport" when sentencing Thompson. (R. 93 at 10.) To the extent that the court occasionally referred to evidence outside the record, there was no prejudice because the facts in the record upon which the court relied overwhelmingly justified its decision to impose a life sentence.

A life sentence is undoubtedly a harsh penalty—one that Thompson sought to evade by pleading guilty. Even so, accepting responsibility can get you only so far. Thompson preyed upon a vulnerable fifteen-year-old girl, subjecting her to systematic forcible and statutory rape, child pornography, and other forms of sexual abuse. He used the girl not only as an instrument to make money but also for his own personal sexual gratification. The damage done to her is unspeakable, and perhaps permanent. Thompson has earned his life sentence.

For these reasons, we AFFIRM.