# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20520

United States Court of Appeals
Fifth Circuit

**FILED**
August 16, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

MARIE NEBA,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, JONES, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Marie Neba was convicted in a jury trial of numerous offenses related to Medicare fraud perpetuated by herself and her husband through their jointly owned company. The district court sentenced her to 900 months in prison, followed by a three-year term of supervised release. On appeal, Neba challenges her sentence on two bases: (1) the sentence was unreasonable by being greater than necessary to comply with 18 U.S.C. § 3553(a); and (2) the sentence was grossly disproportionate to her conduct in violation of the Eighth Amendment. Neba also argues that the district court erred in failing to grant her third motion to substitute counsel. We AFFIRM.

## I.    Sentencing

We first address Neba's two arguments related to her sentence.  Because Neba did not object to either her presentence report or her sentence, we review for plain error.  *United States v. Heard*, 709 F.3d 413, 425 (5th Cir. 2013).  Under plain error review, Neba must show: (1) "an error or defect . . . that has not been intentionally relinquished or abandoned"; (2) a legal error that is "clear or obvious, rather than subject to reasonable dispute"; (3) that the error "affected the appellant's substantial rights"; and (4) that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" such that this court should exercise its discretion to remedy the error.  *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (alteration in original) (quoting *Puckett v. United States,* 556 U.S. 129, 135 (2009)).

A. Procedural and Substantive Reasonableness of the Sentence

Neba first argues that her sentence was greater than necessary to comply with the § 3553(a) sentencing factors.  To determine if a sentence was indeed reasonable, we use a bifurcated review process.  *United States v. Scott*, 654 F.3d 552, 554–55 (5th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38 (2007)).  For the first consideration,

> We . . . determine whether the district court committed any significant procedural error, such as: "(1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the [] § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range."

*Id.* at 555 (quoting *United States v. Armstrong,* 550 F.3d 382, 404 (5th Cir. 2008)).    If there was no procedural error, we then reach the second consideration, which is "the substantive reasonableness of the sentence,

considering the factors in [] § 3553(a)." *Id.* (quoting *United States v. Gutierrez-Hernandez,* 581 F.3d 251, 254 (5th Cir. 2009)).  A sentence within a properly calculated Guideline range is presumptively reasonable.  *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006).

Although Neba characterizes all of her § 3553(a) challenges as substantive reasonableness challenges, the issues she raises are related to (1) the district court's alleged belief that it was required to sentence her to the statutory maximum and (2) the district court's consideration of her arguments for a downward variance.  These are procedural challenges.  *See id.*

Neba's Guidelines range provided for up to a life sentence, limited to 900 months as the statutory maximum.  Thus, her 900-month sentence was within the Guidelines range.  Nonetheless, Neba maintains that the sentencing court mistakenly believed that it was required to sentence her to the statutory maximum, ignoring her arguments that she would be sufficiently punished by a lower sentence.

There is no indication of a mistaken belief on the part of the sentencing court that it was required to sentence Neba to 900 months.  Neba points to the court's statement that the most important factor in determining the sentence was that the Guidelines recommended a life sentence.  Stating that something is a "factor" does not mean, or even imply, that the judge considered it a mandate.  The sentencing court reviewed the presentence report during sentencing and listed a number of "factors" that went into the sentencing decision, including Neba's "role in the offense, the amount of loss attributable to [Neba] compared to others, obstruction of justice, aggravating role enhancement, *and* most importantly, the [G]uideline range of life."  Moreover, the court noted Neba's primary arguments for a downward departure—her three minor children at home and her recent breast cancer diagnosis—just prior to sentencing.  The court heard an explanation from the Government

explaining why those facts should not affect Neba's sentence. In context, it is clear that the sentencing court considered the appropriate factors, including Neba's arguments for a downward departure, before making its sentencing decision. Therefore, the sentencing procedure was sound, and the procedural challenge fails. Given the deferential review of a within-guidelines sentence, we conclude that the substantive unreasonableness challenge also fails. *See Scott*, 654 F.3d at 555.

B. Eighth Amendment

Neba next argues that the district court's sentence violated the Eighth Amendment's guarantee against cruel and unusual punishments, claiming that her sentence was grossly disproportionate to her offense. Separation of powers principles are of particular import in the Eighth Amendment context and caution against finding prison sentences unconstitutional. *See Ewing v. California*, 538 U.S. 11, 22 (2003) ("[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment, and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare." (quoting *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (per curiam))).

There are two parts to the test to determine whether a sentence is grossly disproportionate in violation of the Eighth Amendment. *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). First, we compare the gravity of the crime against the severity of the sentence. *Id.* Only if the sentence seems grossly disproportionate to the offense do we reach the second step of the analysis and compare the sentence to "(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *Id.* Neba fails the first step, so we do not reach the second step.

Here, Neba was convicted of eight counts: conspiracy to commit health care fraud, three counts of aiding and abetting health care fraud, false statements relating to health care matters, conspiracy to pay and receive

No. 17-20520

health care kickbacks, payment and receipt of health care kickbacks, and conspiracy to commit laundering of monetary instruments.  For over nine years, Neba participated as a leader in a sophisticated Medicare fraud and money laundering scheme.  She defrauded Medicare—a program used to ensure that particularly vulnerable individuals (the elderly and the disabled) are able to afford medical care—to the tune of $13 million.  Neba paid illegal kickbacks to physicians, patient recruiters, and Medicare beneficiaries to further the scheme, ultimately claiming fraudulent Medicare benefits for more than 1000 patients.  Neba also obstructed justice in the course of the investigation.

Neba argues that her sentence is effectively a life sentence, and a life sentence is disproportionate to a nonviolent, first offense.  Neba is currently fifty-four years old.  Therefore, a seventy-five year sentence is equivalent to a life sentence.  *See United States v. Looney*, 532 F.3d 392, 395 (5th Cir. 2008) (per curiam).  This is particularly apparent given Neba's current medical state.  We are sensitive to the fact, as the district court was, that Neba is currently receiving treatment for metastasized breast cancer.  However, that does not change the fact of her crimes, and the legal system mandates that those criminally liable receive just punishments.  Here, Neba participated as a leader in a prolonged, extensive Medicare fraud scheme, defrauded Medicare of over $13 million dollars, and procured the involvement of numerous outside individuals to participate in her scheme.  Although seventy-five years is a severe sentence, we cannot say that Neba's crime was not grave enough that the sentence is grossly disproportionate to her crime.  *See Ewing*, 538 U.S. at 21 ("[T]he proportionality principle 'would come into play in the extreme example if a legislature made overtime parking a felony punishable by life imprisonment . . . .'" (internal ellipses omitted) (quoting *Rummel v. Estelle*, 445 U.S. 263, 274 n.11 (1980))). This is not the "exceedingly rare" case that would

warrant a successful Eighth Amendment challenge, particularly on plain error review. The district court did not plainly err in imposing Neba's sentence.

## II.     Motion to Substitute Counsel

We therefore move to Neba's other argument, that the district court erred in denying her motion to substitute counsel, and in doing so, violated her Sixth Amendment right to counsel of her choice. The standard of review for a district court's decision to disallow substitution of counsel is for an abuse of discretion. *United States v. Jones*, 733 F.3d 574, 587 (5th Cir. 2013).

Neba's motion to substitute counsel at issue here was made within a week of trial. Neba had twice previously substituted counsel almost a year beforehand, with the district court's permission. The Government opposed Neba's motion at issue here, in large part based on the belief that Neba was using the request as a way to delay the trial after the district court had denied her motion to continue merely days before. The district court understood Neba's apparent frustration with her attorney, but it ultimately denied her motion to substitute counsel. The court's particular concern was with docket control, i.e., the proximity of the request to the trial date. It noted that it was "not fair to the system" for a party to be able to request a change of counsel right before trial and throw months of planning off schedule—"that's just not how it works." The court disagreed with Neba's contention that her attorney was not prepared, as, at the least, her attorney had heard all of the evidence that the Government was preparing to put on, and therefore, could anticipate and defend against it. But even if Neba's attorney was not as prepared as Neba would have preferred, the court stated that Neba should not have waited until the week before trial to make a motion to substitute. To the court, it appeared that Neba was attempting to delay trial. In the end, the district court refused Neba's request to substitute counsel and maintained the date of trial, which was set for the next day.

No. 17-20520

The Supreme Court has made clear that trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal citation omitted).    We have invoked that language to compile a list of fairness considerations: (1) whether a continuance would be required; (2) whether the party's concerns were "based on anything of a factual nature"; (3) whether the party requested substitution of counsel late in the case; and (4) whether "a continuance could compromise the availability of" key witnesses. *Jones*, 733 F.3d at 587–88.  With regard to the district court's calendar, we have articulated that, ideally, a district court would ask the parties about the amount of time they need to prepare; but a district court can nonetheless, by being aware of the facts of the case and its own docket, be "convinced that a substitution would necessitate a continuance" of such a length as to be a burden on its docket. *Id.* at 588.

Applying these considerations here, there is little question that the district court did not abuse its discretion in denying Neba's motion to substitute counsel.  Neba's motion was made within a week of trial.  Although it would have been ideal for the district court to have asked Neba how long of a continuance her new attorney would have needed before trial, *id.*, inevitably, it was longer than the mere days (or day, as the case may be) her attorney would have had if the district court had granted Neba's motion.  Moreover, the district court had good reason to believe that the continuance would not be short—the judge had previously certified the case as complex, and the case had been pending at that point for almost a year.  The district court could have reasonably believed that there was no actual problem with Neba's counsel but rather, because Neba was out on bond prior to trial, she wanted to delay the trial.  Based upon these considerations, it was not an abuse of discretion for the district court to deny Neba's motion for substitution of counsel.  *See United*

7

*States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980) (per curiam) ("The freedom to have counsel of one's own choosing may not be used for purposes of delay. Last minute requests are disfavored." (internal citation omitted)).

AFFIRMED.

No. 17-20520

EDITH H. JONES, Circuit Judge, concurring:

Under current law, the court's opinion in this case is well reasoned and cannot be gainsaid. Neba's long-running and sophisticated Medicare fraud scheme yielded her family $13 million that was flagrantly stolen from U.S. taxpayers. We reject Ms. Neba's claim that her 900-month sentence was "unreasonable" because it was calculated in accordance with the Guidelines, fell within the Guidelines, must be deferentially reviewed on appeal, and is accordingly "presumptively reasonable." Ms. Neba's case, in my view, displays the lack of meaningful judicial standards for determining the substantive reasonableness of Guidelines sentences.

A bit of background is in order. In providing for sentencing guidelines, Congress instructed judges to consider in each case specific factors including "just punishment," the "sentences available," and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(2)(A), (a)(3), (a)(6). The same provision enjoins courts to issue sentences that are "sufficient, but not greater than necessary" to achieve the listed objectives. § 3553(a). Congress instructed the U.S. Sentencing Commission to apply these factors in writing the Guidelines and also to "avoid[] unwarranted sentencing disparities." 28 U.S.C. § 991(b). The Sentencing Guidelines Manual acknowledges these directions, stating that "the [Commission's] basic approach" was to achieve Congressional objectives of obtaining "reasonable uniformity" in sentencing similar offenders convicted of similar crimes and "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." U.S. Sentencing Guidelines Manual § 1A1.3 (U.S. Sentencing Comm'n 2000).

The Supreme Court has held that appellate courts may presume that a within-Guidelines sentence is reasonable. *Rita v. United States*, 551 U.S. 338, 347, 127 S. Ct. 2456, 2462 (2007). But the Court issued conflicting signals

concerning when, if ever, the presumption can be rebutted.   The Court's opinion flatly states, "[f]or one thing, the presumption is not binding," 551 U.S. at 347, 127 S. Ct. at 2463, but it also characterizes the presumption as guided by the abuse of discretion test.   551 U.S. at 351, 127 S. Ct. at 2465.   A concurring opinion takes this to mean that "*presumptively* reasonable does not mean *always* reasonable; the presumption, of course, must be generally rebuttable," and it adds, "[o]ur decision today makes clear . . . that the rebuttability of the presumption is real."  551 U.S. at 366, 127 S. Ct. at 2474 (Stephens, J., concurring) (emphasis in original).   In deciding whether defendant Rita's correctly-calculated sentence was "not unreasonable," however, the Court essentially restated and invoked the Guidelines for his crime.  *See* 551 U.S. at 359-60, 127 S. Ct. at 2469-70.  If there is a threshold for an appellate finding of substantive unreasonableness, rebutting the presumption, *Rita* does not clarify it.

The instant case suggests why some such threshold is needed.

First, this 900-month sentence is by far the longest I have ever seen imposed in a Medicare fraud case.  Our court has considered many similar fraud schemes and resulting sentences, although this one may involve the most money stolen from Medicare.  But the Nebas' scheme is not unique in many of its details.  By piling on charges, perhaps for tactical reasons, the Government heightened the maximum statutory sentence to life imprisonment and inflated the ultimate Guidelines sentence calculation.  Ms. Neba's resulting sentence is not similar to those of defendants sentenced for similar crimes.  *See, e.g. United States v. Barson*, 845 F.3d 159, 168 (5th Cir. 2016) (affirming sentences of 120 months and 130 months for Medicare fraud).   Yet under *Rita* and our precedents, we must assume the district court's within-Guidelines sentence was substantively reasonable because it was procedurally correct.

In effect, the presumption is non-binding in theory but nearly ironclad in fact. Cases in which any court has vacated sentences for "substantive unreasonableness" are few and far between. The Sentencing Commission reported that only one case was reversed or remanded for a "[g]eneral reasonableness challenge" in *any* circuit in 2017. UNITED STATES SENTENCING COMM'N, SOURCEBOOK OF FEDERAL SENTENCING STATISTICS S-149. Very likely it was referring to a decision by the Second Circuit, which has not adopted the presumption of reasonableness. *See United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017) (holding that a 225-month within-Guidelines sentence was substantively unreasonable). On what basis may appellate courts that apply the presumption find an abuse of discretion for sentences that, while within the Guidelines, still embody punishment far outside of the mean for crimes of the same general sort?

Second, while Ms. Neba surely deserves stiff punishment, another way to test the "substantive reasonableness" of her 75-year sentence is to assess its "proportionality" against sentences that have been imposed for other federal crimes. I turn again to my experience with hundreds of federal criminal cases and consider the lengthy sentences this court has often affirmed over the years for crimes by sex traffickers, and child pornography offenders. Compared with these heinous crimes, Ms. Neba's sentence still stands out as among the most severe I have observed. For instance, this court recently affirmed a not-unusual sentence of 292 months for sex trafficking of minors, *United States v. Smith*, __ F.3d __, 2018 WL 3406927, at *4 (5th Cir. 2018). The same lengthy sentence was meted out for possession and receipt of child pornography. *United States v. Winstead*, 717 Fed. App'x 369, 370 (5th Cir. 2017); *cf. Jenkins, supra* (225-month sentence for transporting/possessing thousands of videos and photos of child pornography was "unreasonable"). To be sure, murderers

11

are often sentenced within Guidelines pertaining to RICO offenses, and many receive life imprisonment. *See, e.g.*, *United States v. Velasquez*, 881 F.3d 314, 346 (5th Cir. 2018) (affirming the life imprisonment sentences for four defendants charged with violations of RICO and murder). But Ms. Neba also received a de facto life sentence. Is thieving from Medicare, even for a long time and for lots of money, and even accompanied by attempted witness tampering, "proportional" to these crimes? Most laymen would not think so. That the presumption of reasonableness attaches to within-Guidelines sentences despite such disparities between Ms. Neba's offense and violent, exploitative crimes suggests something "unreasonable" is afoot, either in the Guidelines themselves or in courts' inability to assess "substantive reasonableness."

Third, the Supreme Court has recently been concerned about appellate courts' application of the plain error rule, whose purpose is to gauge when errors committed in the sentencing court, but not preserved for appeal, may nonetheless deserve appellate correction. Fed. Rule Crim. P. 52(b). *See, e.g., Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018). In *Rosales-Mireles*, the petitioner was sentenced to 78 months, which turned out to be in the mid-range of the (ultimate) correct Guidelines calculation, 70-87 months. *Id.* at 1905. The Court's opinion concluded that the petitioner deserved resentencing even though the maximum benefit to him may be 8 months.[1] *Id.* at 1911. The Supreme Court held that plain errors on sentencing "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1906

---

[1] Practically speaking, the actual resentencing in similar cases occasionally becomes moot because during the course of appeal, the petitioner has served and been released from the erroneously imposed sentence. This court frequently confronts similar disparities of a year or less between the initial erroneous sentence and the correct sentence as eventually determined by the appellate court.

(citing *United States v. Olano*, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779 (1993) (internal quotation marks omitted).

But if such plain errors, which may affect a few months of imprisonment, deserve judicial correction, I think it fair to ask whether the Court should next begin to consider articulating some rules for "substantive reasonableness." Ms. Neba's uniquely onerous Guidelines sentence stands well outside the heartland of those for similar crimes and is far from proportional to the sentences for life-threatening crimes. The presumption of "reasonableness" is either rebuttable—or it is not.