# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 30, 2025

Lyle W. Cayce
Clerk

No. 24-30214

United States of America,

*Plaintiff—Appellee*,

*versus*

Elijah D. Brown,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:22-CR-226-1

---

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Elijah Brown pleaded guilty to two counts of machinegun possession. He now challenges the substantive reasonableness of his sentence, an upward variance from the Sentencing Guidelines recommendation. We AFFIRM.

I

On September 23, 2022, Shreveport police officers responded to an "armed persons call" at the Peach Street Apartments. Upon their arrival,

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

officers observed a man carrying a rifle and getting into the backseat of a white Jeep parked outside the apartment complex. An officer asked the man and the driver, Tedric Ratcliff, to step out of the vehicle, patted them down, and detained them. The vehicle was searched, and officers recovered multiple firearms. Further investigation revealed that the vehicle was stolen, as were two of the firearms recovered from the vehicle. Officers also found 9.7 grams of marijuana in the car.

As relevant here, officers recovered a tan 9 mm Glock pistol with a "Glock switch,"[1] and a Palmetto Arms 7.62 AR rifle with a drop-in auto sear. Officers also found a small backpack containing Brown's ID and medication prescribed to him. They located Brown sitting on the steps of a nearby apartment about 30 yards away from the vehicle and took him into custody. Brown was charged with two counts of illegal possession of a machinegun under 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d). Ratcliff, his stepfather, was charged with the same offenses.

After a failed motion to suppress the evidence against him, Brown pleaded guilty to both counts. The presentence report ("PSR") calculated a base offense level of 18 because the Glock pistol equipped with the Glock switch was a machinegun. Brown had no prior convictions, placing him in Criminal History Category I. And he demonstrated acceptance of responsibility for the offense, earning a three-level deduction, making his final offense level 15. This yielded an advisory guidelines range of 18–24 months of imprisonment.

The PSR also described Brown's medical history in some detail. Brown was diagnosed with congestive heart failure at age 19. He now has a

---

[1] "Glock switch" is slang for a disconnector that holds down the trigger bar on a Glock pistol, allowing it to fire more quickly.

left ventricular assist device (LVAD) implanted in his chest, operated using a controller and battery pack worn outside his body. He also uses an intra-aortic balloon pump (IABP) attached to his heart. Brown is in custody in Davant, Louisiana, so he can receive regular treatment at the nearby Ochsner LSU Medical Center. He takes five medications to manage his physical conditions and another for anxiety.

Neither Brown nor the Government submitted objections to the PSR's recommended prison sentence. Brown likewise did not object to the PSR or the Guidelines range at his sentencing. At the sentencing hearing, however, Brown's counsel urged the court to take his medical conditions into account.

The district court imposed a sentence of 42 months in prison. The sentence was "designed to send a message to other people in Shreveport who convert ordinary firearms into automatic weapons." Brown's counsel objected and timely noticed an appeal. Brown argues here that the district court's upward variance was substantively unreasonable because it "did not account for Brown's life threatening medical condition" and "gave significant weight to the court's extrinsic views."

## II

At the outset, the parties dispute the applicable standard of review. While we review a preserved substantive-reasonableness claim for abuse of discretion, *United States v. Woods*, 102 F.4th 760, 765 (5th Cir. 2024), an unpreserved claim is reviewed for plain error, *United States v. Williams*, 620 F.3d 483, 493 (5th Cir. 2010). Here, however, we "pretermit[] the question of how to preserve a particular substantive-reasonableness argument" because Brown "could not prevail even under the less deferential standard." *United States v. Zarco-Beiza*, 24 F.4th 477, 481 (5th Cir. 2022) (internal quotation marks and citation omitted). *See also United States v. Holguin-*

*Hernandez*, 955 F.3d 519, 520 n.1 (5th Cir. 2020) (declining to reach specific preservation arguments on remand from Supreme Court where defendant failed under both).

### III

Substantive reasonableness review is "highly deferential." *Woods*, 102 F.4th at 765 (quoting *United States v. Fraga*, 704 F.3d 432, 439 (5th Cir. 2013). Even if we "might reasonably have concluded that a different sentence was appropriate," that alone "is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007). Our deference reflects that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant" than we do. *Rita v. United States*, 551 U.S. 338, 357 (2007).

When reviewing a sentence for substantive reasonableness, we consider "the totality of the circumstances." *Gall*, 552 U.S. at 51. "A sentence is substantively unreasonable if it does not account for a factor that should have received significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing the sentencing factors." *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013) (cleaned up) (referring to the factors from 18 U.S.C. § 3553(a)).

### A

Brown first contends the district court "did not account for [his] life threatening medical condition." We disagree. The district court first mentioned its awareness of Brown's "mental health issues," and the "medication" found with the converted Glock pistol in his backpack. It then noted its consideration of his "physical and mental health condition." The district court further recommended that Brown be housed somewhere he could receive physical and mental health care "to maintain [his] status as best

as possible." The court expressed confidence that the Bureau of Prisons "does have the capability of assisting" Brown in managing his conditions. The district court merely decided not to give his medical conditions controlling weight. *Accord United States v. Rodriguez*, 523 F.3d 519, 526 (5th Cir. 2008) (finding that declining downward variance was substantively reasonable for a defendant in "fragile medical condition"); *United States v. Gutierrez*, 635 F.3d 148, 155 (5th Cir. 2011) (affirming district court's upward variance despite defendant's "ill health"); *United States v. Neba*, 901 F.3d 260, 264 (5th Cir. 2018) (affirming district court's assignment of statutory maximum despite defendant's cancer diagnosis).

B

Brown next contends the district court "gave significant weight to extrinsic evidence from outside the record" by considering "its own personal beliefs" about gun violence. The district court noted that Brown's offense made him "part of the problem with the gun violence in Shreveport." Brown alleges this was improper because the district court based his sentence on "its own personal beliefs concerning Glock switches" and observations about gun violence and automatic firearms that find "no support in the record."

First, deterrence is one of the permissible sentencing factors in 18 U.S.C. § 3553(a)(2)(B). *See also* U.S.S.G. Ch. 4, Pt. A, intro. comment. ("General deterrence of criminal conduct dictates that a clear message be sent to society . . . .").[2] The district court also explained that the upward variance was primarily designed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for this offense."

---

[2] The requirement that district courts make "individualized, case-specific" sentencing decisions, *United States v. Herrera-Garduno*, 519 F.3d 526, 531 (5th Cir. 2008), cannot preclude their consideration of deterrence, a Guidelines-sanctioned factor that, by its nature, requires some "[l]umping." *See post*, at 18 (Graves, J., dissenting).

These factors are all included in § 3553(a)(2)(A). *Cf., e.g.*, *United States v. Smith*, 977 F.3d 431, 437 (5th Cir. 2020) (upholding district court's "heavy sentence" designed to "send a message").

Second, the district court did not reversibly err by relying on unreliable facts. "There is a long and durable tradition that sentencing judges enjoy discretion in the sort of information they may consider" in sentencing. *Concepcion v. United States*, 597 U.S. 481, 491 (2022) (cleaned up). In fact, the "scope" of that "inquiry" is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972). *See also Williams v. New York*, 337 U.S. 241, 250–51 (1949) (declining to "treat[] the due-process clause as a uniform command that courts . . . abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence" or "restrict[] the view of the sentencing judge to the information received in open court").

Rather, the district court's sentencing considerations need only "have some minimal indicium of reliability and bear some rational relationship to the decision to impose a particular sentence." *United States v. Young*, 981 F.2d 180, 187 (5th Cir. 1992) (quotation omitted). That requirement is "not intended to be onerous." *United States v. Malone*, 828 F.3d 331, 337 (5th Cir. 2016). Of course, a district court cannot rely on materially untrue information—but under our precedent, the defendant bears the burden of demonstrating the sentencing court ran afoul of that rule. *United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004).

Here, the district court was chiefly concerned with the devices used to convert Brown's two firearms into automatic weapons. *See, e.g.*, ROA.174 ("No one puts a Glock switch on a Glock firearm for the heck of it. There's a purpose involved, and it's not lawful."). Brown does not point to any fact

or finding that was inaccurate or unlawful. Thus it is sufficient for present purposes to hold that Brown has not carried his burden to show that the district court reversibly erred.

C

As a last resort, Brown objects to the district court's balancing of the sentencing factors. While a district court abuses its discretion when it makes "a clear error of judgment in balancing the sentencing facts," *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006), no such error occurred here.[3] Brown alleges the district court gave too little weight to mitigating factors, like his lack of criminal history and medical condition, and too much weight to deterrence. But "it is not possible, let alone required," for the district court to "give incommensurable factors such as 'the history and characteristics of the defendant' and 'adequate deterrence to criminal conduct,' equal weight." *United States v. Hernandez,* 633 F.3d 370, 375 (5th Cir. 2011). *See also Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 406 (5th Cir. 2019) (affirming reasonableness of sentence because district court adequately considered "medical challenges" and appellant contested only "how [the § 3553(a)(2)] factors should have been weighed"). Although the district court did not give a fulsome description of the weight it gave to Brown's medical condition, it "must have believed that there was not much more to say."[4] *Rita*, 551 U.S. at 358, *see also id.* at 359 (holding that where

-------------------------------------------------------------

[3] While sentencing courts must indeed "consider every convicted person as an individual," *post*, at 18 (GRAVES, J., dissenting) (citing *Gall*, 552 U.S. at 52), the quoted language from *Gall* also states: "[t]he uniqueness of the individual case, however, does not change the deferential abuse-of-discretion standard of review that applies to all sentencing decisions." *Gall*, 552 U.S. at 52. Even in cases of a "significant variance" from the Sentencing Guidelines, such deference is required. *Id.* at 56.

[4] Our dissenting colleague objects to this quotation of Supreme Court precedent. *See post*, at 13 (GRAVES, J., dissenting). While we agree that district courts significantly ease the task of meaningful appellate review by comprehensively explaining sentencing

"the sentencing judge considered the evidence and arguments," the law does not "require[] the judge to write more extensively"). Even if we would choose a "different sentence," that "is insufficient to justify reversal."[5] *Gall*, 552 U.S. at 51.

Finally, in evaluating substantive reasonableness, we may consider "the extent of the deviation" from the Guidelines recommendation. *Id.* But "there is no presumption of unreasonableness for an above-Guidelines sentence." *Woods*, 102 F.4th at 765. Here, the sentence imposed exceeded the Guidelines recommendation by 18 months, or 75%. We have upheld "similarly 'major' upward variances." *United States v. Hudgens*, 4 F.4th 352, 359 (5th Cir. 2021). *See, e.g.*, *Woods*, 102 F.4th at 766 (upholding 114% upward

---

decisions, *id.* at 13, "the Supreme Court has not imposed stringent requirements regarding the length or detail of such an explanation." *Fraga*, 704 F.3d at 438. Rather, where the sentencing judge "heard and considered the evidence and arguments," heard allocution, and explained the reasons for the upward variance, we may engage in "effective review; no further explanation [is] required." *Id.* at 439.

[5] It appears that our dissenting colleague would do more than just choose a different sentence. Going further, the dissenting opinion casts doubt on the charges and guilty plea itself. *See post*, at 14–15 (GRAVES, J., dissenting) (implying that Brown was either not responsible for the charged conduct or did so only at the behest of his stepfather, who "was arguably in a position of power over him"). If the appellate standard of review bars us from reversing a district court where "we might reasonably have concluded that a different sentence was appropriate," *Gall*, 552 U.S. at 51, it surely bars us (at the request of no party, and upon no challenge to the guilty plea or charges) from speculating about the facts underlying the indictment, PSR, and guilty plea.

Moreover, the Supreme Court has long noted district courts' "institutional advantage over appellate courts in making" factual determinations at sentencing. *Koon v. United States*, 518 U.S. 81, 98 (1996). The same applies to the officers and prosecutors who investigate facts, make charging decisions, and offer and accept plea deals. We will not, absent an actual legal challenge, evaluate sentencing based on facts adduced *in another case* and our own inferences from them. *See post*, at 15 (GRAVES, J., dissenting). That institutional advantage perhaps explains why our dissenting colleague's alternative theory does not address that police discovered photos of Brown himself holding the tan Glock with the switch installed.

variance); *United States v. Jones*, 75 F.4th 502, 506–07 (5th Cir. 2024) (upholding 100% upward variance); *United States v. Brantley*, 537 F.3d 347, 348 (5th Cir. 2008) (upholding 253% upward variance); *United States v. Hebert*, 813 F.3d 551, 562 (5th Cir. 2015) (upholding 1214% upward variance).

\*       \*       \*

Brown has shown no reversible error in the district court's sentence. We therefore AFFIRM.

No. 24-30214

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting:

The majority affirms the district court's above-Guidelines sentence. Because this sentence amounts to a near-life sentence, did not account for relevant factors, and the justifications for varying upward lack support in the record, I find the sentence substantively unreasonable under the totality of the circumstances, and respectfully dissent.

"In reviewing a non-Guidelines sentence for substantive reasonableness, the court will consider the totality of the circumstances." *United States v. Gerezano-Rosales*, 692 F.3d 393, 400 (5th Cir. 2012). There are three ways a sentence can be substantively unreasonable and an abuse of discretion: (1) it does not account for an 18 U.S.C. § 3553(a) factor that should have received significant weight, (2) it gives significant weight to an irrelevant or improper factor, or (3) it demonstrates a clear error in judgment in balancing the sentencing factors. *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013).

Brown's sentence is substantively unreasonable in all three ways.

I

18 U.S.C. § 3553(a) details the factors to be considered in imposing a sentence. The first is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Brown argues that the district court improperly assessed this factor because it failed to account for his life-threatening medical condition. Given the record, I agree.

At age eighteen—while still in high school—Brown was diagnosed with congestive heart failure, a severe condition in which the heart fails to pump blood efficiently. To save his life, doctors inserted a balloon pump in Brown's femoral artery and guided it up to his heart, using an external

10

machine to inflate and deflate Brown's heart.[1] Later, doctors implanted a left ventricular assist device (LVAD), a battery-operated pump that sits near and connects to his heart in the chest cavity.[2] A cable that transmits electricity— so that the pump drives blood into Brown's heart—runs from the LVAD to an external unit that supplies the electricity and monitors many metrics to ensure the heart and Brown do not die.[3] This control unit, in turn, is connected to a battery pack in a bag that Brown wears at all times. With these devices, Brown was given a prognosis that he had ten years to live—nearly seven of which have passed as of this writing in March 2024.[4]

Despite this, Brown graduated high school, where he also participated in the United States Army's Reserve Officers' Training Corps (ROTC) program. Throughout, he worked at least one part-time job until he was declared disabled. Brown also tried his hand at higher learning. But shortly after starting college, where he was studying nursing, Brown left due to his congestive heart failure. He continues to struggle with shortness of breath, chest pain, and bed sores, and is currently taking six medications to deal with blood clotting, pain, heart damage, and the anxiety of his impending doom.

---

[1] *See Intra-Aortic Balloon Pump Therapy*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/intra-aortic-balloon-pump-therapy.

[2] *See Left Ventricular Assist Device (LVAD)*, Stanford Med., https://stanfordhealthcare.org/medical-treatments/l/lvad.html.

[3] *Id.*

[4] One study on LVAD devices found that there was only a fifty-one percent survival rate through seven years, with the most common cause of death being multisystem organ failure. Daniel Zimpfer et al., *Long-Term Survival of Patients with Advanced Heart Failure Receiving a Left Ventricular Assist Device Intended as a Bridge to Translation*, 13 Circulation: Heart Failure 3 (March 13, 2020), https://www.ahajournals.org/doi/10.1161/ CIRCHEARTFAILURE.119.006252.

Due to violent crime in Shreveport, Brown and his family moved to Fort Worth, Texas. He lived with his mother until August 2022, when he moved into a one-bedroom apartment in Irving, Texas with his fiancée.

The next month, Shreveport police officers responded to an armed persons call. An officer spotted a man, Sellers, carrying a rifle into a stolen Jeep. Another officer went to the Jeep and asked Sellers and his passenger, Ratcliff, to step out of the vehicle. During a search of the vehicle, officers located two stolen Glocks and two guns registered to Brown, both with a conversion device installed. Officers also found a small backpack that contained Brown's medication and identification. Officers found Brown approximately 90 feet away, sitting on the steps of a nearby apartment. Sellers stated he had seen Brown with his registered Glock months prior but the day of the arrest was the first time he had seen it with the switch.

In connection with this incident, Brown was arrested at twenty-two years old. He had never been arrested before. Eighteen months later, Brown was sentenced. During his allocution at sentencing, Brown, in part, stated:

> [W]ith my [LVAD] bag, my projected lifespan is supposed to be ten years. I've had it for almost four[,] . . . it makes me realize that I don't got long, so I need to get back in school, finish what I was doing, and just live the rest of my life the best I can.

Then his counsel asked the Court to consider his medical condition prior to handing down a sentence.

The entirety of the district court's discussion about Brown's medical condition is made up of three brief remarks. First, it said that "[t]he court is well aware of the mental health issues facing this particular defendant and the medication that was found in the backpack." Second, it explained that the "sentence was selected after consideration of the factors in [18 U.S.C. § 3353(a)] pertaining to . . . his physical and mental health condition."

Third, it added that it would "make a recommendation to the Bureau of Prisons that [Brown] be housed in a facility that is equipped to handle [his] current physical condition as well as [his] mental health issues with the medication necessary to maintain [his] status as best as possible."

The majority says the district court's failure to "give a fulsome description of the weight it gave to Brown's medical condition" is because "it 'must have believed that there was not much more to say.'" *Ante* at 7 (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007)).

This is precisely the type of case where there is more to say. "The court, at the time of sentencing, *shall* state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Shall denotes it is mandatory, not advisory. We should not be left to speculate about what the district court "must have believed."

The district court said that it considered Brown's mental condition—his anxiety—and the medications found in his backpack, but the record does not indicate what those medications were. The district court mentioned Brown's "physical condition," but made no explicit reference to his congestive heart failure and the impact the disease has on how long he will likely live. The district court mentioned Brown's "current physical condition" in recommending where his sentence should be served. But it made no mention of its effect on the length of the sentence. Those terse references to Brown's physical condition are insufficient to support the district court's sentence.

In my view, a lethal condition should receive "significant weight," so it must be accounted for. *Warren*, 720 F.3d at 332. A district court's consideration of the § 3553(a) factors requires an "individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). "After settling on the appropriate sentence, [the district court] must

adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

But as detailed above, the district court failed to "adequately explain" how it considered Brown's congestive heart failure, making it difficult for us to apply "meaningful appellate review." *Id.*; *cf. United States v. McElwee*, 646 F.3d 328, 344–45 (5th Cir. 2011) (deferring to the district after it "explicitly" considered the § 3553(a) factors); *United States v. Gonzalez-Flores*, 638 F. App'x 406, 407 (5th Cir. 2016) (unpublished) ("In pronouncing sentence, the district court specifically referenced the sentencing factors . . . and it explained how they applied based upon the facts of the case. Thus, the district court's reasons for the sentence were fact-specific and consistent with the 18 U.S.C. § 3553(a) sentencing factors."). That alone suffices to vacate and remand. Otherwise, how can we "ensure that the justification is sufficiently compelling to support the degree of the variance"? *Id.*

It is also not apparent that the district court considered "the nature and circumstances of the offense."[5] 18 U.S.C. § 3553(a)(1). There are multiple concerning elements of this arrest and charge that the district court elides. And at least one that it gets wrong.

---

[5] The majority reads my forthcoming analysis (1) as an implication that Brown was either not responsible for the charged conduct or did so only at the behest of his stepfather and (2) as an affront to the institutional advantage that district courts have at making factual determinations. *See ante* at 8 n.5. But I am not speculating about the facts; I am simply stating them and considering them. That is what the statutory code makes clear is not only appropriate but required. *See* 18 U.S.C. § 3553(a)(1) (mandating that the district court consider the *nature and circumstances* of the offense). Yes, the district court has an institutional advantage and could have made these factual determinations. That is precisely why the district court is required to do so in the first instance. And that is why we should vacate and remand so that it, not this court, engages in this fact-intensive inquiry and balancing.

The district court said that the Glock with the switch was inside the backpack that included Brown's medication. That is wrong. The Pre-Sentence Investigation Report (PSR) says the Glock was *under* the backpack. This raises the concern that while Brown owned the Glock, he, who was about ninety feet away from the vehicle, did not actually possess the weapon at the time of his arrest. And the only person who had a conversion device on their person was Ratcliff, who possessed the vehicle, was in the vehicle with the guns, had several previous arrests and multiple convictions, and as Brown's stepfather, was arguably in a position of power over him. *United States v. Ratcliff*, 2025 WL 618105, at *2 (5th Cir. February 26, 2025).

Yet none of this was discussed by the district court as it sentenced Brown. There is little in the record to support the conclusion that the district court, as mandated by 18 U.S.C. § 3553(a)(1), considered "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

## II

Another way that a sentence can be substantively unreasonable is if it gives significant weight to an irrelevant or improper factor. *Warren*, 720 F.3d at 332. Brown accurately points out that the district court based its sentence on multiple "facts" that were not supported by the record.

The district court said that Brown was "part of the problem with the gun violence in Shreveport." But there is no evidence in the record that Brown ever committed any crime of violence or used any firearm in *any* crime. Again, Brown had no criminal record whatsoever. Notably, Brown registered both of his firearms. That is not the typical behavior of individuals planning to go out and commit crimes, because, of course, the guns would be readily traced back to them. Moreover, Brown was a resident of Irving, Texas—not Shreveport—at the time of his arrest.

15

No. 24-30214

The district court also relied on its belief that a Glock with a switch is "inaccurate" "with the casings spread all over everywhere wherever they're fired. And there's no aim and there's no control over this, and people who have nothing to do with the encounters . . . are shot and killed." As Brown correctly argues, there is nothing in the record to support these assertions. This clearly runs afoul of the sensible rule that "a district court may *reference* information from outside the record at sentencing so long as the court does not *rely* on such extrinsic information in its sentencing determination." *United States v. Roy*, 88 F.4th 525, 531 (4th Cir. 2023) (emphasis in original) (citing *United States v. Thompson*, 864 F.3d 837, 842 (7th Cir. 2017); and *United States v. Meyer*, 790 F.3d 781, 783 (8th Cir. 2015)).

We have previously stated that a "district court may consider any information that bears sufficient indicia of reliability to support its probable accuracy." *United States v. Landreneau*, 967 F.3d 443, 451 (5th Cir. 2020)).

The majority now extends that principle to say that a district court may also *rely* on extrinsic information. To get there, the majority points to *United States v. Ramirez*, 367 F.3d 274 (5th Cir. 2024) for the premise that "the defendant bears the burden of demonstrating that the sentencing court ran afoul" of the rule that a district court cannot rely on materially untrue information. *Ante* at 6–7. But in *Ramirez*, the information was in the record. As it was in *United States v. Young*, 981 F.3d 180, 188 (5th Cir. 1992), and the line of cases that led to *Young*. *See United States v. Galvan*, 949 F.3d 777, 784 (5th Cir. 1991); *United States v. Fulbright*, 804 F.2d 847, 853 (5th Cir. 1986); *United States v. Tucker*, 404 U.S. 443, 445 (1972). Here, it is not.

Due process requires that "sentencing facts must be established by a preponderance of the evidence." *United States v. Johnson*, 648 F.3d 273, 277 (5th Cir. 2011). Sure, "[g]enerally, a PSR 'bears sufficient indicia of reliability to be considered by the sentencing judge in making factual

16

determinations.'" *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012). But here the "facts" the district court relied on were not in the PSR, *or anywhere else in the record.*

Much like our sister circuits, in my view, a sentence that *relies* on facts outside of the record flouts the constitutional due process to which a criminal defendant is entitled. *See Roy*, 88 F.4th at 531 (citing *Thompson*, 864 F.3d at 842; and *Meyer*, 790 F.3d at 783). This not only generally undermines the rule of law, but specifically renders the district court's sentence substantively unreasonable.

### III

Another way that a sentence can be substantively unreasonable is if it "represents a clear error of judgment in balancing the sentencing factors." *Warren*, 720 F.3d at 332. Brown contends that the district court gave too little weight to mitigating factors, like his lack of criminal history and life-threatening medical condition, and too much weight to deterrence. I agree.

True, we cannot expect district courts to "give incommensurable factors . . . equal weight." *United States v. Hernandez,* 633 F.3d 370, 375 (5th Cir. 2011). Instead, we expect them to "use their judgment to weigh the relative importance of each factor in relation *to each particular defendant*, with some factors being more important in some cases and other factors more important in others." *Id.* (emphasis supplied). In other words, we expect district courts to give the sentencing factors their due weight. The record does not convince me that the district court did; if you do not weigh relevant facts of an important factor, then it cannot have been given its due weight.

Brown allocuted that he had around six years to live. Yet, the district court sentenced him to three-and-a-half years in prison, a year and a half longer than the upper guideline figure—175% of the upper limit. Such "[a] major deviation from the Guidelines range requires a greater justification

than a minor one." *United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013) (citing *Gall*, 552 U.S. at 50). But that "greater justification" is lacking.

Even if we presume that the district court considered the substantive impact Brown's health should have on his sentence, the counterweight the district court offered is unavailing. The district court's variance was "designed to send a message" to people modifying guns that led to the death of "people who have nothing to do with the encounters for which these weapons are maintained are shot and killed." But the district court conceded that there was "no indication [Brown was] involved in that kind of conduct," and failed to tie the hope of sending a message to the particulars of this case in a meaningful fashion. *United States v. Aguilar-Rodriguez*, 288 F. App'x 918, 921 (5th Cir. 2008) (unpublished).

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person *as an individual and every case as a unique study* in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (emphasis supplied); *accord United States v. Cortez-Balderas*, 74 F.4th 786, 790 (5th Cir. 2023) (requiring "individualized, case-specific reasons"). In my view, the district court's opinion markedly deviates from this tradition.

Lumping Brown in with nonparty criminals defies the statutory mandate that courts must perform an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. Even under a highly-deferential standard of review, *see United States v. Woods*, 102 F.4th 760, 765 (5th Cir. 2024), using Brown's sentence to "send a message to other people in Shreveport" without giving due consideration to there being "*no identifiable victims to his offense*," or these being his final years on Earth "represents a clear error of judgment in balancing the sentencing factors." *Warren*, 720 F.3d at 332. In doing so, the district court breached its obligation to "impose

No. 24-30214

a sentence, sufficient, but not greater than necessary to comply with" the purposes of the § 3553(a) factors.[6]

## IV

To summarize, "[i]n reviewing a non-Guidelines sentence for substantive reasonableness, the court will consider the totality of the circumstances." *United States v. Gerezano-Rosales*, 692 F.3d 393, 400 (5th Cir. 2012). Section 3553(a) requires that courts consider a slew of factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes from the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[6] Brown is arguing that the district court failed to give sufficient weight to his life-threatening illness, and that in doing so, the district court decided to take away an extra forty percent of the time Brown has left before his heart will likely stop functioning.

Moreover, save for child crimes and sexual offenses, "the court shall impose a sentence of the kind, and within the range . . . unless the court finds that there exists an aggravating . . . circumstance . . . not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Nowhere in its articulation of reasons does the district court explain how the Guidelines did not adequately consider an "aggravating circumstance." Brown was convicted for illegally possessing a machine gun that was not registered to him, so the guidelines already considered Brown's conversion of a registered handgun into a not-registered machine gun.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines

(5) any pertinent policy statement

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But again, it is not clear that the district court considered all of these, and that even if it did, it weighed them correctly.

*The nature of the offense and the history and characteristics of the defendant.* Brown pled to illegally possessing a machine gun and an unregistered gun—the machine gun being his registered handgun that had a conversion device, which is what rendered it unregistered. Plainly, Brown was sentenced for having a conversion device on his legally registered gun.

The gun with the switch was found nearly 100 feet away from Brown in a car that was possessed by Ratcliff, his stepfather, and occupied by Ratcliff and Sellers. Ratcliff, had several arrests, including for unlawful possession of a firearm by a felon, theft of a firearm, possession with intent to distribute while carrying a weapon, multiple burglaries, domestic abuse aggravated assault, and had been convicted of drug possession, theft, and fleeing from an officer.

Brown had no criminal history and not a single other arrest. He was a ROTC participant in high school and at times juggled multiple jobs on top of

that. After graduating, Brown attended college before ultimately dropping out because of a progressive condition that causes his heart to fail to sufficiently pump enough blood. Even with treatment, Brown had about six years to live.

*The need for the sentence imposed*. The district court wanted to "send a message to other people in Shreveport" and noted Brown was "clearly a person who is dangerous to the community in Shreveport." This led the court to deviate upward significantly from the sentencing guidelines. This even though at the time of his arrest, Brown lived nearly 200 miles away from Shreveport and there was no evidence he had ever caused any harm to anyone.

*Sentencing Disparities.* Ratcliff, Brown's co-defendant, had a higher total offense level and criminal history score, was the active offender, and does not have a life-limiting chronic heart condition. Yet, he received a *within*-Guideline sentence of *fifty-seven months*, without any upward variance to "send a message to other people in Shreveport" or a note that he was "clearly a person who is dangerous to the community in Shreveport." Notably, Ratcliff's sentence has been vacated and remanded because there was no evidence to support the district court's finding that Ratcliff had used the stolen gun to facilitate his illegal possession of the stolen vehicle. *See United States v. Ratcliff*, No. 24-30192, 2025 WL 618105, at *3 (5th Cir. Feb. 26, 2025). As the district court relied on that "fact" to enhance Ratcliff's sentence under United States Sentencing Guideline § 2K2.1(b)(6)(B), *id.* at *1, upon remand Ratcliff will have a lower offense level and relatedly lower sentencing guideline range. All to say, the difference between Ratcliff and Brown's sentence will likely shrink even further.

*Victim Impact.* Here, the PSR indicates that "[t]hese are Title 18 and 26 offenses, and there are *no* identifiable victims." Accordingly, "[r]estitution is not applicable in this case."

The purpose of the district court's statement of reasons is to enable the reviewing court to determine whether, as a matter of substance, the sentencing factors in § 3553(a) support the sentence. *United States v. Smith*, 440 F.3d 704, 707–08 (5th Cir. 2006). But the district court's statement did not explicitly—if at all—consider, much less weigh, many of the facts that touch on these relevant § 3553(a) factors. This is so despite the related commands that a court *shall* consider the 3553(a)(1) factors and "at the time of sentencing, *shall* state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), and the due process requirement that "sentencing facts *must* be established by a preponderance of the evidence." *Johnson*, 648 F.3d at 277.

In conclusion, the district court failed to "thoroughly articulate its reasons when it impose[d] a non-Guideline sentence." *Smith*, 440 F.3d at 707–08. Absent articulated reasons to the contrary, this sentence is substantively unreasonable, unfair, and unjust.[7]

---

[7] "In effect, the presumption [that a within-Guidelines sentence is reasonable] is non-binding in theory but nearly ironclad in fact. Cases in which any court has vacated sentences for 'substantive unreasonableness' are few and far between." *United States v. Neba*, 901 F.3d 260, 267 (5th Cir. 2018) (Jones, J., concurring). "The Sentencing Commission reported that only one case was reversed or remanded for a '[g]eneral reasonableness challenge' in *any* circuit in 2017." *Id.* (emphasis in original). Unfortunately, even though there is no presumption that an above-Guidelines sentence is reasonable, there is also lack of clarity for when the threshold of clear sentencing error is passed. I fear no such threshold exists in practice. "The fact is, it is only the exceptionally rare case in which this court finds an upward variance substantively unreasonable." *United States v. Hoffman*, 901 F.3d 523, 565 (5th Cir. 2018), *as revised* (Aug. 28, 2018) (citing *Gerezano-Rosales*, 692 F.3d at 401 (finding a sentence substantively unreasonable after the court increased a

No. 24-30214

Considering the totality of the circumstances, we should vacate and remand for a more through consideration of the relevant § 3553(a) factors based on the evidence in the record.

Accordingly, I respectfully dissent.

_____

Guidelines sentence it has just imposed by three years because the defendant spoke "disrespectfully")).